The Honourable United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honourable Court may give their attendance and they shall be heard. God save the United States of America and this Honourable Court. Court is in session. Today's cases will be called as previously announced and at times will be allotted to counsel. The first case today is United States v. Monica Toth, No. 21-1009. Attorney Wiesner and Attorney Rubin, if you could please introduce yourself so the Court could hear you at this time before we begin argument. Attorney Wiesner. Good morning, Your Honour. It's Jeffrey Wiesner for the appellant Monica Toth. And Attorney Rubin. Good morning. My name is Jennifer Rubin and I represent the government. Thank you. Attorney Rubin, at this time, please mute your audio and your video. Attorney Wiesner, please go ahead and begin your argument. Good morning again, Your Honours. May I have two minutes for rebuttal? You may. Thank you, Your Honour. The Eighth Amendment limits the government's ability to punish either by cruel and unusual punishment or through excessive fines. The penalty assessed against Ms. Toth in this case of $2.1 million, $3.1 million, including interest and penalties, is excessive and violates the Eighth Amendment. In fact, it is 70 times, as I will get to soon, the maximum guideline fine she would have been subject to had she been deemed criminally liable for the FBAR penalty. But the threshold issue is, does the FBAR penalty constitute punishment, thus placing it within the purview of the Eighth Amendment? Under the Supreme Court's definition, a monetary fine is punishment if the purpose of the fine, at least in part, serves one of the two key justifications for punishment, namely either retribution or deterrence. The Supreme Court in Austin explained that the mere label of civil as opposed to criminal is not dispositive of this question. A civil penalty can also be punishment if its purpose cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as serving either retribution or deterrence. The view was again stated in the later opinion of the United States v. Bajikagian. The Ninth and the Seventh Circuits have since applied the Eighth Amendment to civil fines, including, in Pimentel v. Los Angeles, parking fines. So the FBAR penalty is undoubtedly punishment. Counsel, excuse me, are we as a panel at liberty to make that determination that you would like us to make in light of our own precedent? Aren't you asking us to do something that we have previously said we... You're asking us to take a position that we have previously rejected. Is that not the case? Well, Your Honor, I assume you're referring to this court's opinion in McNichols. I am. And I will say this about McNichols, that number one, it's distinguishable. McNichols held that tax penalties are not subject to the Eighth Amendment. It is clear, and I've cited a number of cases holding that the FBAR penalty is not a tax penalty. And McNichols also said that Austin is not applicable to any situation beyond the circumstances in that case. But that also turned out to be not the case. In Bajikhajian, the court applied the Eighth Amendment to a different forfeiture statute in that case. But McNichols also relies upon decisions dealing with the Double Jeopardy Clause. Could you go back to the tax penalty point? At one level, I follow that it's not a tax penalty because it's a reporting requirement and it's not a penalty for nonpayment of tax. And I assume that's the sense you mean, it's not a tax penalty. Correct. On the other hand, in McNichols, there was a penalty imposed for a tax violation, the nonpayment of the tax. And that penalty is hard to describe as being any more remedial than the penalty here. Could you address that part of it? Because that's the part I'm having a little trouble seeing how McNichols doesn't control. Do you follow what I'm asking? I actually don't remember specifically, but I can answer your question. McNichols relied, as I began to say, on these decisions going back to Helvering v. Mitchell back in 1938, which discussed not the Excessive Fines Clause, but the Consecutive Prosecution Clause, the Double Jeopardy Clause. And the construct in that case, in Helvering, in the Double Jeopardy context, was that to assess whether a penalty serves the primary purpose of being remedial. That construct changed in Helper and then in Austin where it wasn't. Take a tax penalty. So it's not just recouping the nonpaid taxes. It's imposing a penalty of 50% of the nonpayment on top of that. We've held that is not punishment. Correct? In McNichols, correct. So we're not free to treat a penalty on top of the nonpaid tax as anything other than nonpunishment. I'm saying that the Supreme Court has now undermined the holding in McNichols. And the case that does that is which? Austin. Austin was relied on by McNichols, wasn't it? Well, Bajikadzian. I think in that case... Now you're shifting to the point about... Just stick with me for one second, okay? Assume that there's no intervening Supreme Court precedent post-McNichols that changes the landscape. McNichols was just construing Austin. McNichols says a tax penalty, 50% on top of the nonpaid tax, is not punishment within the meaning of Austin. And I'm bound to follow that as a panel. How is the penalty here different than that tax penalty? I agree with you it's not a tax penalty because it's a penalty for nonreporting. But in what sense is it different given the logic of McNichols which treated a penalty for nonpayment of tax as not being punishment? Well, again, I think that the Supreme Court since then has undermined that rationale. In Kurth Ranch, I think that was another opinion that undermined the rationale. And I think in McNichols... Are you saying if we rule for you, we would then have to overrule McNichols? Because what I'm trying to figure out is there a way that McNichols is distinguishable which is what you first argued. If it's distinguishable, that depends on some contention that the 50% tax penalty in McNichols is somehow different vis-a-vis punishment than the reporting penalty at issue here. That's what I'm trying to get you to answer. If you're saying there's no way to distinguish them, if we rule for you, we have to overrule McNichols, that's fine. That's your argument. Well, the only way I can say that they're distinguishable is that McNichols tried to cabin itself to tax penalties which fall under taxes. Taxes have for a very long time been considered remedial penalties. There's some way to suggest that if they fall under Title 26 tax penalties, they're remedial. They support the internal revenue process of... Mr. Wiesner, I took your point to be that this was, as Judge Barron said, a reporting violation as opposed to a failure to pay and the government had some choices about what it chose to prosecute her for. If one accepts your contention, nonetheless, the two are clearly related, aren't they? For the government to know that there is an account on which taxes are to be paid, there should be a report. So that's first question. Second question is, even if one is to apply a proportionality test, what is your argument that this is disproportional? The government says you actually should look to the fact that she didn't pay taxes for a while. She eventually paid those taxes and if you look at the range of penalties there, there's nothing disproportional. So you've got a two-part question. To answer your second part first, I want to be sure to point the court, because I don't think I referenced this correctly in our brief, to the record appendix at 3065 to 3068. I also want to refer the court to the McMahon affidavit, a tax lawyer who submitted an affidavit that reflects the payments that Ms. Toth actually made and that's at ECF 147.5. When you go through the Bajagajian factors, and I'll just address specifically what you've asked, aside from the reporting, this is a reporting offense. Ms. Toth was already subject to various tax penalties that address her failure to pay income tax. I think that you need to distill that from the idea that this is simply a reporting offense because there are other penalties that address the failure to pay tax. It is important to note that the entire amount of her underpayment in 2007, the year that she was assessed the $2.1 million fine, her entire amount of underpayment was $54,000. The other years, the underpayments in 2005 was $538. In another year, it was $9,000. There were very small amounts of money, and then she was assessed the tax fraud penalty for those underpayments, which amounted to $27,000 for 2007. The total combined amount of her civil fraud penalty for the five years from 2005 to 2009 was $39,000 for her failure to pay taxes. The amounts are dwarfed by the $2.1 million penalty that she was assessed under the FBAR penalty. We believe that that discrepancy, which I said, is 70 times. If you go through the guideline amount, if she were prosecuted under the FBAR statute, the guideline amount is $3,000 to $30,000. That is the same discrepancy in Bajikaji, exactly 70 times the difference between the maximum fine that she would have received. Thank you. Could you just address the personal jurisdiction issue quickly? Did you raise a personal jurisdiction question? Oh, the failure to effectuate service of process on time, correct. Sure. The rule changed, and the government was given notice in April of 2015 that the rule was going to change. If you're right about that there was no finding of, I forget what the phrase is, just impractical reason. If you're right that the district court made no such finding, and we thought it was debatable on the record whether that finding was compelled, what's the remedy that's supposed to follow from that? Is that just a vacating remand for the district court to make that finding or not to make the finding? Your Honor, I think, and I cited a whole bunch of cases that I think dismissal is appropriate. She was not properly served, and that is a fundamental… But if there had been a finding of just impractical, then it would be a proper service. And so if the district court was just under a mistaken impression that it didn't need to make such a finding, don't we have to vacate remand to see whether it would make that finding? If it doesn't make the finding, I agree with you, we dismiss. But what would be the reason not to vacate remand for it to have a chance to make the finding once it understands that if we agreed with you that the rule requires that finding? Well, I think that the district court concluded that it just didn't apply. And so if we concluded you're right, that's wrong. Why wouldn't we then have the district court now say, well, now that you know what the rule requires, you either make the finding or you don't. What would be the reason not to do that? I think that might be appropriate, Your Honor. Counsel, what would be the statute of limitations consequences of doing that if there was a dismissal at this point? If there was a dismissal, the statute of limitations has long ago run. Right. But the vacate and remand would just be, there wouldn't then be a statute of limitations issue, I assume, right? The case would still be on the same clock. I assume if the district court would decide that it wasn't just impractical for some reason, which we argue that that doesn't make any sense in the context of that standard. But I don't think that that would affect the statute of limitations. It would simply be addressing the standard. Okay, you've reserved some time. Thank you. Thank you. At this time, if Attorney Wiesner would please mute his audio and video, and Attorney Rubin, please unmute your audio and video and reintroduce yourself on the record so the court can begin. Good morning. May it please the court. My name is Jennifer Rubin, and I represent the government. I'd like to turn with those questions about service of process and point out a few things. The first thing is we believe that this court could determine that, in fact, it's not just impracticable to apply retroactively a new time period to something that had already started before the rule became effective. Are you saying that that's a compelled legal conclusion? Well, we believe that the Hinton court got it right, that it is actually, in fact, unjust to apply retroactively a new time frame. But even if this court were concerned about that lack of a finding from the district court, the fact is under the harmless error rule, you need to show prejudice. And they haven't even tried to show prejudice. If you look at the Carney case, it says that there is no prejudice as long as you were served reasonably soon after the statutory period, the presumptive service period ended. Here, she was served within 27 days of the end of the 90-day period that Ms. Toth says should apply. And she has not shown any prejudice here whatsoever from being served at that time. She has not shown any inability to prepare her case. And we would also say that finding that there was harmless error here would be consistent with this court's conclusion in IR that, in fact, that service period is a procedural tool, not a substantive tool for repression. And so consistent with that and consistent with Ms. Toth's failure to cite anything establishing any prejudice, she simply hasn't shown that any error there could have been anything other than harmless. The cases she cites in her reply brief generally involve cases where, at the time that the court was ruling, there had been no effective service at all. Here, she does not deny that she received service. She does not deny that she has noticed. She does not establish any prejudice. Therefore, at worst, this was harmless error. If there are no further questions on the service point, I'd like to turn to some of the points that were made regarding the Eighth Amendment during my opponent's opening argument. First thing is, we submit that under Bajikashian and the Supreme Court's other case law, standard is not whether something might have some deterrent effect. I mean, as the Hudson case points out, any financial exaction could have a deterrent effect, whether that's a tax penalty or anything else. Rather, the question is whether it is linked to criminal culpability. Ms. Todd actually cited an excellent case on this point in her reply brief called United States v. Jailoran, which did a detailed analysis of the Austin, Alexander, and Bajikashian cases and says, here, the Supreme Court consistently focused on whether the financial exaction at issue had some link to criminal culpability. And then just as we did in our brief on page 58, the Bajikashian, the Jailoran court said, you need to look at the Bajikashian factors, whether she was convicted, whether the crime was required conviction, whether it was defined by the conviction, to determine whether, in fact, the Eighth Amendment even applies. And we recognize that the Seventh Circuit cases that have been cited actually do not find that a civil penalty would be subject to the Eighth Amendment. It says even if we assume that it is, there's no excessiveness. I'm not sure I'm fully caught. Are you saying that those cases that find that a parking fine, if it's done civilly, cannot trigger the excessive fines clause? I was about to get to Pimentel, which is the Ninth Circuit case that was cited. In Pimentel, it's very interesting, very early on in the opinion, the Ninth Circuit says, well, generally the Supreme Court has looked to whether it has only applied this to criminal forfeitures. And then they say, but we're going to apply it civilly. So we acknowledge the Ninth Circuit in Pimentel did apply the Eighth Amendment excessive fines clause to a civil penalty, but they really gave no reason for why that would be appropriate and why that would be consistent. Given that the court in Austin and in the other cases has been clear in saying that the civil criminal label is not critical. If they say that the penalty could only be imposed as a mechanism of redressing criminal culpability, it would have been easy enough to say so. It's true that they've applied it in contexts where the remedy was attached to a criminal violation, but they've never held that that's a requirement. Have they? We would say that they have, because they've consistently linked it to criminal culpability. When they've looked to why... But Ms. Rubin, I have a different problem with the argument, which is it seems to turn the applicability of the excessive fines clause on a discretionary decision to handle a tax matter civilly rather than criminally. And I'm not certain that a constitutional right should be subjected to that sort of discretionary decision. So let's assume the Ninth Circuit is correct to that it can apply to civil penalties. Where does that leave you in the argument? Well, we would say a few things. First of all, we would say that this penalty is more akin to a tax penalty like the one addressed in Nichols, and therefore it should be treated as remedial. And Congress made clear in the legislative history relating to the Bank Security Act that its goals were remedial. It wants to address tax loss. It wants to address, just as the tax penalties are put in place, to address harm to the tax system. And it also wanted to address the high cost of investigating these sort of secret bank accounts, even identifying who has them and trying to identify any information about them. And just as in Jose, this Court looked at what Congress said in legislative history and is going to rely on that to determine that, in fact, there is no eighth amendment problem here, we should say you should also look at the legislative history. And what is the link between the penalty amount and the cost to the government of investigating these unreported overseas accounts? Congress determined that it wanted to base it on the balance of the account, in part to reflect how difficult it is to identify the full amount of tax loss for any given hidden account, particularly for earlier years that we can't even try to get the taxes recovered through the tax system. Is this some theory that the greater the amount, the harder the taxpayer will try to hide this from Treasury? Well, I would say that's consistent with what Ms. Toth did here. She took a lot of steps here to try to hide the account. She routed payments through her South American relatives to try to avoid her name being identified. My concern is about the reasoning of Congress in adopting this penalty. It's true that eighth amendment cases frequently turn on the individual facts, but there needs to be some linkage, don't you think, between this sum and the non-deterrent, non-retributive interests of the government? I would say Congress made a reasonable determination that, number one, the tax loss and the harm to the tax system goes out because you have a higher amount in these accounts, and number two, that in fact it is very difficult to identify these accounts, and that yes, it is reasonable to assume that someone might make more efforts to try to hide an account if there's a lot of money in it. Certainly, this case illustrates the lengths that someone might go to try to hide an account. That last point sounds like a deterrence point, not a remedial point. The last point, no, it's basically the concept that it may be harder to find an account, and it may be more likely to be hidden if it's got more money in it. The fact of the matter is we don't even know what the losses were with this account because we don't know for the earlier years how much income she had, and we don't know really anything about what she was doing with these accounts other than the effort she was making to hide it. It's reasonable for Congress just to say, on balance, we believe that as balances go up, harm goes up. That's the harm to Treasury, the harm to the tax system. These are all factors that the courts have looked at. Are there any further questions on the Eighth Amendment question or anything else? Just very quickly, in this remedial criminal distinction, there's a finding of willfulness that is central to the amount that was imposed here in terms of a penalty. That sounds very much like a criminal concept. How does that factor into the analysis, that mental state? I wouldn't say it's criminal because you don't have to show the same basis as criminal, but certainly it's reasonable for Congress to say that if you willfully fail to report your account, that the harm goes up because you're making more efforts, you're making it harder to find it. It's probably an indication that you have more reason to hide the account. If you're willfully hiding the account, that's all very reasonable for Congress to do. This penalty was well within the maximum that Congress authorized, and the harm to the tax system is substantial when you have large accounts being hidden and not subject to the tax system like most taxpayers' accounts are. Well, taking Judge Lopez's excellent question, suppose Congress had authorized this penalty without any requirement of willfulness. Would your argument have to be different? Would it have to be different? The long and the short of it is Congress can determine that large accounts that are hidden in foreign jurisdictions that provide secrecy cause harm. I think one thing that they've pointed out in the history behind the Bank Security Act is the fact that these sort of accounts are only available if you have a certain amount of money to make a minimum deposit into these sort of accounts, and not everybody has those sort of funds. And so that is damaging itself to the tax system because some people can hide their money. One thing I'm not entirely clear about is once it's reported and once the account is known, what is the impediment that's caused by the non-reporting to being able to recoup the back-owed taxes on the account? In some cases, it's an ability to prove how much money is at issue. In some cases, there can be statute of limitations problems with going back that far. I think the Garrity case discusses this. When you have these accounts that go back, in Ms. Toth's case, for a decade, it can be hard to even establish what the full tax loss was, much less to try to collect it. And that's what Congress was faced with, with people who were hiding these accounts, these large accounts, long-term. And the fact of the matter is my esteemed colleague on the other side is saying, hey, you need to compare it to, here's what happened in 2007, and when you're doing one of these penalties, you're looking at somebody who was hiding this account for a full decade. She only revealed it when UBS said, hey, we're going to reveal it to the IRS because we have to. Ms. Rubin, I did not read the legislative history, but is it fair to say that foreign countries may not require the keeping of and transmission to the U.S. of records going back for as long a period of time as, say, would be required under American law? I think that it's fair to say I don't know all foreign jurisdictions, especially all foreign jurisdictions that might have one of these accounts. But I do know that, certainly in this case, we do not know what the tax loss is for the older years. And the Garrity case points out that in that case as well, there was just years and years of just unknown tax losses, which does tend to indicate that the records that you're able to get late in the game when you're finally, finally able to uncover one of these accounts may just simply be inaccurate and inadequate to determine the full tax loss. And that is the problem that Congress was faced with. And this is how Congress chose to deal with it. And even the Pimentel case, which again, we disagree with its decision that the Eighth Amendment applies, but it points out that it is permissible for the legislature to look to other purposes, other things they're trying to remediate, including in that case, the harm to downtown from congestion, but in this case, the harm to the tax system, which, as Nichols and Helvering, upheld the sort of tax penalties that, in fact, do serve to try to remediate the unfairness of people who cheat on their taxes. And Kurth Ranch does nothing to alter that. Kurth Ranch was a tax that was expressly tied to criminal fraud. Okay, thank you, counsel. Are there any further questions? Thank you very much. Thank you. We'll hear a rebuttal now. Yes, please. Attorney Wiesner, please just reintroduce yourself to begin your rebuttal. Jeffrey Wiesner for Monica Toth. I think the court's questions have covered everything that I had wanted to add. If there are no more questions, I will. You've made this argument about the regulation setting a cap on the total amount that can be imposed. If your Eighth Amendment claim was successful, what is the cap you're contemplating the Eighth Amendment would impose, and how does it relate to the dollar cap under the regulation? Is it lower, higher, the same? I'm sorry, Your Honor. I don't quite follow the question. If we won on the regulation versus – I'm asking it the other way. If you won on the Eighth Amendment claim, what is the dollar amount you're saying the Eighth Amendment places as a cap on the amount that could be imposed? I'm not sure there is a cap that the Eighth Amendment would impose. I think it is particular to the individual. In your case, your client, you think should win under the Eighth Amendment. What is the amount that you think the Eighth Amendment sets as the limit? I would think from the other cases – I mean, Bajikagi affirmed the district court in that case's determination that the limit was, I think, three times the maximum guideline sentence. What I'm trying to figure out is would that be lower than the regulation's cap? Well, the amount on the guideline here was $30,000, three or four times that amount. It could be around that. But I'm not sure that the cap on the regulation piece of the argument affects the Eighth Amendment analysis. No, it doesn't. It may affect whether we need to reach it or anybody needs to reach it. If your Eighth Amendment argument is already going to be under that cap, it wouldn't matter much for us to decide what the regulation's cap was. Well, according to Bajikagi, three times the maximum guideline fine would be $90,000, I think, in this case, and that would place it under the cap. Okay, thank you very much. Thank you. That concludes argument in this case. Attorney Wiesner and Attorney Rubin should disconnect from the hearing at this time.